## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **DALE BAKER**, individually, and behalf of all others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 15-cv-02038-CSB-DGB |
| ) | |
| **THE ADT CORPORATION**, a Delaware corporation, and ) | Honorable Colin S. Bruce |
| **ADT, LLC d/b/a ADT SECURITY SERVICES**, a Florida limited liability company, ) ) | Magistrate Judge David G. Bernthal |
| ) | |
| Defendants. ) | Jury Trial Demanded |

# SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Dale Baker ("Plaintiff") brings this action individually, and on behalf of all others similarly situated, by and through counsel, and complains against Defendants The ADT Corporation ("ADT Corp."), and ADT, LLC d/b/a ADT Security Services ("ADT Security") (collectively, "ADT"), as follows:

## INTRODUCTION

1.     Plaintiff brings this class action to redress ADT's deceptive and unlawful business acts and practices in connection with the sale of wireless home security equipment and monitoring services.  Specifically, ADT markets its home security equipment and monitoring services as being safe and reliable, and that ADT uses the most innovative and advanced technology; however, in reality, ADT's wireless signals are unencrypted and unauthenticated, and can easily be intercepted and interfered with by unauthorized third parties.  As such, ADT's customers are far less safe than ADT leads them to believe.

2.      Through a variety of brands, including ADT, ADT Pulse, and Companion Services, ADT provides electronic security, interactive home and business automation, and related monitoring services to approximately 6.5 million residential and small business customers in the United States and Canada.

3.      The majority of ADT's annual revenue (typically 90%) is driven by the equipment and services ADT provides, which are governed by multi-year contracts that generate recurring revenue.

4.      ADT's service offerings include the installation and monitoring of residential and small business security and premises automation systems that react to movement, smoke, carbon monoxide, flooding, temperature and other environmental conditions and hazards, and address personal emergencies, such as injuries, medical emergencies or incapacitation.

5.      In its marketing materials, including on its website, ADT represents, *inter alia*, that it "has one of the most trusted and well-known brands in the security industry today." Additionally, ADT's marketing materials are intentionally designed to give potential customers the overall net impression that its home security equipment and services are secure and reliable.

6.      However, ADT's marketing materials and statements are misleading.  ADT's home security system wireless signals are unencrypted, unauthenticated, and otherwise insufficiently protected from intrusion and interference by unauthorized third parties.  Indeed, it is easy for third parties to hack into ADT's home security wireless signals and interfere with their transmission.  For example, third parties can disable or suppress the home security system, or cause the system to activate an alarm when there is actually no security breach.

7.     At all relevant times, ADT knew that its home security wireless signals were unencrypted and therefore less safe and reliable than advertised, and that ADT does not use the most innovative and advanced technology.

8.     Yet, despite the ease with which ADT's systems can be breached, ADT does not notify customers about the fact that its wireless systems are unencrypted and insufficiently secure to prevent third parties from interfering with them.  To the contrary, all of ADT's marketing materials promote the safety, security, and peace of mind that ADT's systems will provide to its customers.

9.     ADT's misleading marketing statements and omissions are particularly egregious in light of the fact that they provide a false sense of security to those individuals and businesses that are most vulnerable: individuals and businesses who are seeking the comfort of an extra level of security that a home security system provides.

10.     ADT's knowing misrepresentations and omissions regarding the quality of its home security systems and the safety that the systems provide, and ADT's failure to encrypt or otherwise secure its wireless signals, violates the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201, *et seq.*, Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, subjects ADT to strict liability in tort, and constitutes unjust enrichment.

11.     Plaintiff, on behalf of himself and the putative Class, seeks declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) requiring ADT to change its marketing materials and to secure its customers' wireless systems, plus actual damages, statutory damages, exemplary damages, injunctive relief, attorneys' fees, litigation

expenses, and costs of suit pursuant to Rule 23(a) and Rule 23(b)(3), for violations of the statutory and common law of the States of Florida and Illinois.

12.     The allegations in this Complaint are based on the personal knowledge of Plaintiff as to himself, and on information and belief as to all other matters through investigation of Plaintiff's undersigned counsel.

## JURISDICTION

13.     This Court has original subject matter jurisdiction under 28 U.S.C. §1332(d)(2). Plaintiff and ADT are of diverse citizenship, the amount in controversy exceeds $5 million, exclusive of interests and costs, and the number of class members exceeds 100.

14.     This Court has personal jurisdiction over ADT for reasons including, but not limited to the fact that ADT regularly conducts business in this District.

## PARTIES

15.     Plaintiff is a resident and citizen of Illinois.

16.     Defendant The ADT Corporation is a Delaware corporation, with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.

17.     Defendant ADT, LLC is a Florida limited liability corporation, with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.

18.     ADT provides home security, home automation equipment, services, and monitoring in various States throughout the nation, including in Illinois.

## FACTS

### *ADT's Home Security and Home Automation Equipment and Services*

19.     ADT markets, advertises, and sells wireless home security and home automation equipment and services to consumers.  These services can be purchased separately, but ADT

4

advertises that "wireless home security systems are easily upgradable to ADT Pulse® service, one simple solution combining home security and home automation."

20.     ADT describes its home security products and services as "Prevention and protection solutions for your home, family and peace of mind."

21.     ADT describes its home automation products and services as "Innovative technology lets you manage your home and lifestyle – anytime, anywhere."

22.     Furthermore, ADT markets and advertises its ADT Pulse® service as providing peace of mind as well, stating that "Smart home systems help you stay connected and protected with easy-to-use features that give you peace of mind – practically anywhere, any time."

### *ADT's Deceptive and Misleading Marketing Statements*

23.     In marketing materials, including on its website, ADT misrepresents that its home security equipment and services are safe, reliable, and secure.     ADT makes these misrepresentations to customers knowing that extra security is the main reason consumers and businesses purchase home security and automation systems.

24.     For example, ADT makes the following representations on its website:

A.  Customers can "Get Security You Can Count On. Every Day of the Year";

B.  "Your haven is armed with 24-hour-a-day protection, 365 days a year";

C.  Customers can "Live worry-free with ADT Security for less than $1 a Day"; and

D.  "Fast. Reliable. Security Protection. ADT stays constantly alert with six Customer Monitoring Centers operating day and night across the country. Our Customer Monitoring Centers are nationally connected, equipped with secure communication links and backed by the latest technology so that our security team is always ready to act the moment an incident occurs."

25.     Additionally, ADT emphasizes the importance of having a home security system and the safety it provides to customers and their families.  For example, ADT makes the following representations on its website:

A.  "When you want to do everything you can to safeguard your loved ones, your home and your treasured possessions, you owe it to yourself and your family to talk to us about our continuous 24/7 protection";

B.  "When it comes to you and your family's safety, we let nothing stand in the way of our professionally trained team immediately working to help ensure your safety";

C.  "Only home security monitoring provides you and your family with the reassurance that even when no one's home, you're protected against unwanted entry and property loss";

D.  "When the alarm is triggered, every second counts"; and

E.  "When security counts [sp] Count on the company with a fast response time."

26.     ADT also represents that it uses advanced and innovative technology.  For example, on ADT's website, there is a section entitled "Innovative Technology."  In that section, ADT states "Our six nationwide Customer Monitoring Centers are operated by state-of-the-art technology backed by powerful equipment and secure communication links. It is this nationwide connection and innovative security technology that gives ADT the ability to provide security protection during adverse conditions."

27.     ADT's marketing materials further highlight ADT's purported advanced technology.  For example, ADT represents that:

A.  "ADT takes pride in using the most advanced technology….";

B.  "Only ADT has the most security industry experience, is the leader in innovative security technology, and can provide you with the fastest response times";

C.  "Our experience, technology and people make the difference in your security protection." and

D. "You invest in ADT home security and automation systems to help protect your loved ones. Your satisfaction is important to us, and is the reason we are committed to providing you with state-of-the-art equipment and service."

28.     ADT's representations in its marketing materials are designed to give customers the overall impression that ADT wireless home security systems and equipment provide the highest most advanced level of safety, and that customers can feel secure in trusting that their security systems will work as advertised.

### ADT's Wireless Systems Are Unencrypted and Easily Hacked

29.     Despite its representations in its marketing materials, ADT's wireless systems are unencrypted and unauthenticated, and otherwise insecure.   Therefore, ADT's wireless systems are easily accessed and manipulated—or "hacked"—by unauthorized third parties.

30.     By hacking ADT's wireless systems, unauthorized third parties can, *inter alia*, remotely disconnect or turn off the security systems so that customers are unknowingly left unprotected by their systems.

31.     Unauthorized third parties can also hack into ADT's wireless systems and use customers' own security cameras to unknowingly spy on them.

32.     Moreover, unauthorized third parties can manipulate ADT's wireless security systems to falsely report that the alarm was triggered.  This causes ADT to call customers and ask if they want the police called.  Troublingly, third parties can use this tactic to see if specific customers actually have the police summoned to their homes; if not, the third parties can use that information to target those customers for home invasions (or worse).

33.     Upon information and belief, third parties can hack into ADT's wireless systems with, *inter alia*, something as simple as a Software-Defined Radio ("SDR"), which sells on the open market with no restrictions for less than $10.

7

34.     *Forbes* recently published an article detailing how easy it is to hack into ADT's wireless systems.  In the article, an individual explained that using a cheap SDR, he was able to see transmissions from ADT sensors and track when people were opening and closing doors in the home.  The individual further explained that with a more sophisticated SDR, he could interfere with transmissions, set off the alarm falsely by telling it doors were opening when they were not, or jamming the system so that it would not go off even if doors did open and the alarm was activated.[1]

35.     ADT knows that its systems are vulnerable to intrusion, and has known for some time.  For example, in a statement, an ADT spokesperson said that "There are many experiments conducted each year by professional hackers in controlled environments who seek vulnerabilities within an array of different products and systems. Our customers should know that we take the outcome from any of these tests with the highest level of seriousness, and we continually invest significant resources in modifying and improving our systems accordingly."[2]

36.     Further demonstrating ADT's knowledge that its wireless systems can be interfered with, upon information and belief, most—if not all—of ADT's alarm panels that it installs in customers' homes and businesses contain a feature that will jam outside signals. However, ADT does not activate this feature for its customers, and indeed, conceals from its customers the fact that this feature is available.

37.     Despite ADT's knowledge of the shortcomings and promise to modify and improve its systems, ADT has failed to modify or improve its systems to encrypt the wireless signals, or to otherwise make them more secure.

---

[1]   http://www.forbes.com/sites/kashmirhill/2014/07/23/how-your-security-system-could-be-used-to-spy-on-you/ (last visited February 5, 2015).

[2]   *Id.*

38.     Moreover, ADT does not notify customers that their systems are unencrypted or insufficiently secure.  Additionally, despite representing in their contracts with customers that "We have explained the full range of protection, equipment and services available to You," ADT uniformly fails to explain to its customers the feature in its alarm panels that can jam outside signals.

39.     Instead, ADT misrepresents the security of its wireless systems and its use of purportedly "advanced and innovative technology" in its marketing materials in order to create the net impression that its security systems are secure and not susceptible to outside interference.

40.     Plaintiff and Class members had a reasonable belief that ADT's wireless security equipment would be encrypted or otherwise secured against outside interference.  Indeed, ADT's marketing and advertising materials emphasize safety and security, and give the net impression that ADT's wireless security equipment could not easily be breached or interfered with.

41.     Specifics of wireless technology—such as how easily it is to "hack" into the technology—is outside the realm of knowledge of the average consumer.  By offering wireless security systems to the public, ADT unquestionably has greater knowledge of wireless technology than the average consumer, and therefore, consumers can reasonably expect to rely on ADT's representations regarding the safety and reliability of its wireless security systems.

42.     However, in its marketing materials, ADT does not warn customers to take precautions against hacking, or that these wireless systems can be hacked.

43.     ADT's misrepresentations and omissions regarding the security of its wireless systems is especially dangerous, as customers review these misrepresentations and believe that they and their families and businesses have an extra layer of protection guarding them when the

wireless systems are activated, whereas, in truth, that extra protection is easily disabled or turned against the customers.

44.     As a result of ADT's misrepresentations and omissions and ADT's failure to secure its wireless systems, customers are much less safe than they think that they are when ADT's wireless systems are activated.

45.     ADT's misrepresentations and omissions regarding the security of its wireless systems was deliberate and intentional, and was designed to mislead customers as to the security and quality of its wireless systems and actively conceal the systems' shortcomings, because if potential customers knew the truth, they would not have purchased an ADT wireless system. Indeed, the primary—if not sole—function of ADT's wireless systems is to provide safety and security, and ADT's misrepresentations and omissions concern that primary function.

46.     ADT knows that it is possible to encrypt or otherwise secure wireless signals in its security systems, as the encryption technology is available and other companies use it in their security systems.

**FACTS SPECIFIC TO PLAINTIFF**

47.     In determining whether to enter into a contract with ADT, Plaintiff researched various security and alarm companies, including ADT.   When researching ADT, Plaintiff reviewed, *inter alia*, ADT's marketing and advertising materials, including the statements made on ADT's website set forth above.

48.     Based on the deceptive and misleading representations and omissions made by ADT as detailed above, Plaintiff entered into an Alarm Services Contract ("Contract") with ADT on May 8, 2013.   The term of the Contract is three (3) years.   Upon information and belief, the

terms of Plaintiff's Contract were the same or substantially similar to all Class members' Contracts, as ADT uses standard, uniform Contracts for all of its customers.

49.     Additionally, in connection with the Contract, Plaintiff and the Class members purchased the corresponding ADT wireless security equipment, such as sensors, a wireless device, and a control box.

50.     None of the marketing materials that Plaintiff saw prior to entering into the Contract disclosed that ADT's wireless security equipment was unencrypted, unauthenticated, or otherwise insecure and easily hacked.

51.     Plaintiff's home security system signals were hacked by an unauthorized third party on at least two (2) separate occasions.  The third party or parties that hacked Plaintiff's wireless system caused the system to be falsely triggered, which in turn caused ADT to contact Plaintiff and have the police called to Plaintiff's home.

52.     Had Plaintiff and the Class members known the truth about ADT's misleading representations, or about ADT's omissions regarding the insecurity of ADT's wireless security equipment, they would not have entered into the Contract or purchased any of the associated equipment.

53.     Plaintiff and the Class members continue to suffer harm as a result of ADT's aforementioned acts and practices, as they remain bound by their Contract with ADT, and will have to pay a penalty if they cancel it.

## CLASS ALLEGATIONS

54.     **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of himself and a putative Class of similarly situated individuals, defined as follows:

> All persons who entered into an ADT Alarm Services Contract and purchased ADT wireless security equipment (the "Class").

Plaintiff also brings this action on behalf of a putative Subclass of similarly situated individuals, defined as follows:

> All Illinois residents who entered into an ADT Alarm Services Contract and purchased ADT wireless security equipment (the "Subclass").

Excluded from the Class and Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

55. **Numerosity**: The exact number of Class and Subclass members is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. Due to the size of ADT, the fact that ADT boasts that it has more than a 25% share of the $11 billion residential security and automation industry, and a 13% share of the $2.4 billion small business security and automation industry, the Class likely consists of thousands of individuals.

56. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and members of the putative Class and Subclass, and those questions predominate over any questions that may affect individual putative Class and Subclass members. Common questions include, but are not limited to, the following:

> a. Whether ADT misrepresents the security and safety that its wireless systems provide;
>
> b. Whether ADT misrepresents that it uses advanced and innovative technology in connection with its wireless services;
>
> c. Whether ADT's wireless systems are unencrypted, unauthenticated, or otherwise insecure;

     d.     Whether ADT failed to warn customers and potential customers that its wireless systems were unencrypted, unauthenticated, or otherwise insecure;

     e.     Whether ADT failed to warn customers and potential customers that their wireless systems could be hacked;

     f.     As to the Class, whether ADT's misrepresentations and omissions regarding its wireless systems constitute an unfair and/or deceptive practice under the Florida Deceptive and Unfair Trade Practices Act;

     g.     As to the Class, whether ADT's failure to sufficiently secure its wireless systems is an unfair and/or deceptive practice under the Florida Deceptive and Unfair Trade Practices Act;

     h.     As to the Subclass, whether ADT's misrepresentations and omissions regarding its wireless systems constitute an unfair and/or deceptive practice under the Illinois Consumer Fraud and Deceptive Practices Act;

     i.     As to the Subclass, whether ADT's failure to sufficiently secure its wireless systems is an unfair and/or deceptive practice under the Illinois Consumer Fraud and Deceptive Practices Act;

     j.     Whether ADT's wireless systems are defective products;

     k.     Whether Plaintiff and members of the Class were damaged as a result of ADT's conduct alleged herein; and

     l.     whether ADT was unjustly enriched as a result of the conduct alleged herein.

57.    **Typicality**: Plaintiff's claims are typical of the claims of the Class and Subclass members.  All are based on the same legal and factual issues.  Plaintiff and each of the Class and Subclass members entered into ADT's standard, uniform Contract, and purchased the same defective ADT wireless security equipment.  Moreover, ADT's aforementioned misrepresentations and omissions were uniformly made to Plaintiff and all Subclass members.

58.    **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and has retained counsel competent and

experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Subclass, and ADT has no defenses unique to Plaintiff.

59.     **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, because joinder of all parties is impracticable. Furthermore, it would be virtually impossible for the individual members of the Class to obtain effective relief because the damages suffered by individual Class and Subclass members are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by ADT's actions.  Even if Class and Subclass members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Complaint.  A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

60.     Unless a class is certified, ADT will retain monies received as a result of its conduct that was wrongfully taken from Plaintiff and Class and Subclass members.  Unless an injunction is issued, ADT will continue to commit the violations alleged, and the members of the putative Class, Subclass and the general public will continue to be misled and continue to be less safe and secure in their homes and businesses.

61.     By making the uniform misleading marketing statements detailed above, and by failing to adequately secure its wireless systems, ADT has acted and refused to act on grounds

generally applicable to the proposed Class and Subclass, making appropriate final injunctive relief with respect to the proposed Class and Subclass as a whole.

**COUNT I**
**Violation of Florida Deceptive and Unfair Trade Practices Act**
**(On behalf of Plaintiff and the Class)**

62.     Plaintiff repeats and re-alleges paragraphs 1-61 as though fully set forth herein.

63.     The FDUTPA, Fla. Stat. § 501.201, *et. seq.*, protects consumers from "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.

64.     Plaintiff and Class members are "consumers" as defined by § 501.203(7) of the FDUTPA, and the subject transactions with ADT are "trade or commerce" as defined by § 501.203(8).

65.     ADT is a "person" within the meaning of the FUDTPA and, at all pertinent times, was subject to the requirements and proscriptions of the FUDTPA with respect to all of their business and trade practices described herein.

66.     ADT violated and continues to violate the FDUPTA by engaging in the herein described unconscionable, deceptive, and/or unfair acts or practices.  ADT's affirmative misrepresentations, omissions, and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

67.     ADT has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce by, *inter alia*, knowingly misrepresenting the security and advanced technology of its wireless services, failing to notify customers of the insecurity of their wireless systems, and failing to

encrypt or otherwise secure their wireless systems, which was deceptive and misleading, and reasonably likely to deceive the public.

68.     ADT's deceptive and unfair marketing campaign detailed herein was uniform to consumers, including Plaintiff and Class members.  Through this extensive and exhaustive marketing campaign, ADT has conveyed one uniform deceptive and misleading message: consumers and businesses who purchase ADT wireless security systems are more secure than they actually are.

69.     ADT's marketing campaign is intentionally designed to induce consumers to purchase its products and accompanying services as a result of its misrepresentations and omissions.

70.     ADT knows about the insecurity and susceptibility to hacking of its wireless systems, yet continues to make the misrepresentations and omissions detailed herein, and continues to provide insecure wireless systems to customers.

71.     ADT violated and continues to violate the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offends public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

72.     Unless preliminary and permanent injunctive relief is granted and ADT is required to encrypt its wireless systems, Plaintiff and the Class will continue to suffer harm throughout the duration of their Contracts.  Plaintiff and the Class do not have an adequate remedy at law for this continued harm, and the balance of the equities weighs in favor of Plaintiff and the Class.

73.     Unless preliminary and permanent injunctive relief is granted and ADT is required to rectify its misleading marketing materials, consumers will continue to be harmed by

purchasing ADT wireless systems as a result of ADT's deceptive and misleading practices, and by being less secure than they otherwise would be.

74.     Plaintiff and the Class have suffered ascertainable losses as a direct result of ADT's employment of unconscionable acts or practices, and unfair or deceptive acts or practices.

75.     The injuries to Plaintiff and the members of the Class were caused by ADT's conduct in deceptive and misleading marketing that originated in Florida, including the marketing materials described above.  All of the marketing and promotional activities and literature were coordinated at, emanate from, and are developed at ADT's Florida headquarters. All critical decisions regarding ADT's marketing were made in Florida.

76.     Furthermore, most of the misrepresentations and omissions alleged herein were contained on ADT's website, which is maintained in Florida.

77.     When Plaintiff and the members of the Class entered into ADT Alarm System Contracts and purchased related equipment, those payments were processed and the money was sent to ADT's headquarters in Florida.

WHEREFORE, Plaintiff prays for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.      Designating Plaintiff as representative of the Class, and his undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against ADT;

D.      Enjoining ADT's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.      Mandatorily enjoining ADT to provide adequate warnings and notice to the Class concerning the vulnerability of ADT systems;

F.      Mandatorily enjoining ADT to secure its wireless systems;

G.      Awarding Plaintiff and the Class actual and punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law;

H.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
(On behalf of Plaintiff and the Subclass)**

78.     Plaintiff repeats and re-alleges paragraphs 1-61 as though fully set forth herein.

79.     At all times relevant hereto, there was in full force and effect the ICFA, 815 ILCS 505/1, *et seq.*

80.     Chapter 2 of the ICFA prohibits unfair or deceptive acts or practices used or employed in the conduct of any trade or commerce.  *See* 815 ILCS 505/2.

81.     ADT's knowing and intentional misrepresentations and omissions set forth above are unfair and deceptive acts or practices prohibited by Chapter 2 of the ICFA.  *See* 815 ILCS 505/2.

82.     ADT's provision of unencrypted, unauthenticated, and otherwise insecure wireless systems to its customers is an unfair and deceptive act or practice prohibited by Chapter 2 of the ICFA.  *See* 815 ILCS 505/2.

83.     ADT's affirmative misrepresentations, omissions, and practices described herein were designed to, and did in fact, deceive and mislead members of the public, including Plaintiff and Subclass members, to their detriment.

84.     ADT's conduct described herein created a likelihood of confusion or misunderstanding for Plaintiff and members of the Subclass by misrepresenting that ADT's wireless systems were secure, reliable, trustworthy, and that ADT uses advanced and innovative technology.

18

85.     ADT's conduct described herein also constitutes prohibited unfair conduct under the ICFA because misrepresentations and failures to disclose in connection with an important safety issue offend public policy; are immoral, unethical, oppressive, and unscrupulous; and cause substantial injury to consumers.

86.     ADT intended to deceive and be unfair to Plaintiff and members of the putative Subclass by engaging in the practices described herein so that ADT could begin collecting the contractual monies due from its customers.   ADT's intent is evidenced by, *inter alia*, its acknowledgement of the insecurity of its wireless systems by its spokesperson in its statement.

87.     ADT intended that Plaintiff and members of the Subclass rely on ADT's misrepresentations and omissions concerning the safety and security of its wireless systems.

88.     Plaintiff and members of the Subclass relied on ADT's misrepresentations and omissions to their detriment by purchasing ADT equipment and entering into ADT Contracts.

89.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce.

90.     The above-described deceptive and unfair acts and practices were part of a widespread and systematic pattern and/or practice.

91.     As a direct and proximate result of the foregoing, Plaintiff and members of the Subclass have been damaged in an amount to be determined at trial, and Plaintiff and members of the Subclass continue to be damaged as a result of the insecurity of ADT's wireless systems.

WHEREFORE, Plaintiff prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Subclass defined herein;

B.     Designating Plaintiff as representative of the Subclass Class, and his undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against ADT;

D.      Enjoining ADT's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.      Mandatorily enjoining ADT to provide adequate warnings and notice to the Class concerning the vulnerability of ADT systems;

F.      Mandatorily enjoining ADT to secure its wireless systems;

G.      Awarding Plaintiff and the Subclass actual and punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law;

H.      Granting all such further and other relief as the Court deems just and appropriate.

### COUNT III
### Strict Liability Under Illinois Common Law
### (On behalf of Plaintiff and the Subclass)

92.     Plaintiff repeats and re-alleges paragraphs 1 to 61 as though fully set forth herein.

93.     ADT is engaged in the business of packaging, distributing and selling products and services to consumers, including wireless home security products and services.

94.     ADT placed its wireless security equipment, including sensors, controls, and broadcasting and receiving devices, into the stream of commerce.

95.     At the time the wireless security equipment left ADT's control and was placed into interstate commerce, that equipment was defective and unreasonably dangerous because—unknown to consumers—the wireless security equipment used unencrypted and insecure signals that allow unauthorized third parties to access and manipulate those signals. Therefore, the wireless security equipment did and does not provide adequate home security, which is the intended, ordinary and reasonably expected use for which the equipment was sold.

96.     ADT's wireless security equipment was expected to and did reach Plaintiff and members of the Class without a substantial change in the condition in which it was sold.

97.     Plaintiff and members of the Class could not by the exercise of reasonable care have discovered that the wireless security equipment was unencrypted and insecure, and hence unreasonably dangerous.

98.     ADT knew that its wireless security equipment would be used by consumers, including Plaintiff and members of the Class, without being inspected for this hidden defect.

99.     ADT could have reasonably and without undue burden designed its wireless security equipment to encrypt or otherwise secure the wireless signals it used.

100.    Alternatively, ADT could have reduced or avoided the risk of harm posed by the insecure wireless signals by providing Plaintiff and members of the Class with reasonable warnings. ADT's failure to adequately warn Plaintiff and the Class members about the defective nature of the wireless security equipment further rendered the equipment defective and unreasonably dangerous.

101.    The defective and unreasonably dangerous condition of the wireless security equipment was the direct and proximate cause of the damages suffered by Plaintiff and members of the Class described herein.

WHEREFORE, Plaintiff prays for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.      Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against ADT;

D.      Awarding Plaintiff and the Class actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

E.      Granting all such further and other relief as the Court deems just and appropriate.

### COUNT IV
### Unjust Enrichment
### (On behalf of Plaintiff and the Class)

102.    Plaintiff repeats and re-alleges paragraphs 1-61 as though fully set forth herein.

103.    By virtue of failing to notify or warn customers that ADT wireless security equipment transmissions could easily be interfered with or "hacked" prior to customers' purchase of ADT wireless security systems, knowing that customers could not by the exercise of reasonable care have discovered that the wireless security equipment was unencrypted and insecure, ADT unjustly retained a benefit (*i.e.*, the amount of money paid for ADT's equipment and monitoring services) to the detriment of Plaintiff and the Class.

104.    Additionally, by virtue of its misleading marketing campaign that induced customers into purchasing ADT equipment and wireless services, ADT unjustly retained a benefit (*i.e.*, the amount of money paid for ADT's equipment and monitoring services) to the detriment of Plaintiff and the Class.

105.    Furthermore, by virtue of designing, distributing, and selling unencrypted and insecure wireless security systems, which render the systems unreasonably dangerous and defective, ADT unjustly retained a benefit (*i.e.*, the amount of money paid for ADT's equipment and monitoring services) to the detriment of Plaintiff and the Class.

106.    ADT's retention of this benefit violates the fundamental principles of justice, equity, and good conscience.

107.    ADT accepted this unjust benefit, and it would be inequitable for ADT to retain the benefit of those monies, as ADT was paid the money as a result of ADT's deceptive and unfair practices.

108.    ADT has obtained money to which it is not entitled, and interest on that money, and under these circumstances equity and good conscience require that ADT return the money with interest to Plaintiff and the Class.

109.    As a direct and proximate result of the foregoing, Plaintiff and the Class have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.    Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against ADT;

D.    Awarding Plaintiff and the Class restitution and any other equitable relief that may be appropriate;

E.    Awarding Plaintiff and the Class actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

F.    Granting all such further and other relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

Plaintiff DALE A. BAKER, individually, and on behalf of all others similarly situated,


By:     s/Thomas A. Zimmerman, Jr.
        Thomas A. Zimmerman, Jr. (IL #6231944)
        Adam M. Tamburelli (IL #6292017)
        ZIMMERMAN LAW OFFICES, P.C.
        77 West Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020 telephone
        (312) 440-4180 facsimile
        www.attorneyzim.com

Counsel for the Plaintiff and Putative Class

## CERTIFICATE OF SERVICE

Adam M. Tamburelli, an attorney, hereby certifies that he caused the above and foregoing document to be served upon counsel of record in this case via the U.S. District Court CM/ECF System, on this day May 7, 2015.


/s/ Adam M. Tamburelli